UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-cv-000376

DOUGLAS T. HAWKINS                                                                                           PLAINTIFF

v.                                              **OPINION AND ORDER**

QUESTAR CAPITAL CORP., JOHN HART
AND BARRY SEALE                                                                                            DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion filed pursuant to Fed. R. Civ. Pro. 12(b)(6) by the Defendants, Questar Capital Corporation ("Questar"), John Hart and Barry Seale (collectively, "Defendants"), seeking dismissal of the Complaint filed by Plaintiff, Douglas T. Hawkins ("Plaintiff") [DE #7]. This motion has been fully briefed and is ripe for review.

**I.      BACKGROUND**

Pursuant to a Registered Representative Agreement dated February 17, 2009 (the "Agreement"), Plaintiff was appointed by Questar, a company engaged in the securities business as a broker/dealer registered with the Securities and Exchange Commission (the "SEC") and as a member of the Financial Industry Regulatory Authority ("FINRA"), as a Registered Representative for the purpose of engaging in the securities business on behalf of Questar [DE #1-2]. As part of this Agreement, Plaintiff agreed to be qualified as a Registered Representative with FINRA and to remain qualified as such during the duration of the Agreement, and, further, to be familiar with and strictly comply with the rules of FINRA [*Id.*].

1

In November 2011, the Kentucky Department of Financial Institutions, Division of Securities, conducted a routine inspection of Plaintiff's books and records, during which they discovered some irregularities [DE #1]. According to Plaintiff's complaint, he immediately corrected these irregularities and then drafted a letter addressing the paperwork issues found by the Department of Financial Institutions and informing Defendants of the actions he had put in place to correct the problems [*Id.*]. Plaintiff alleges that he was lead to believe that these corrections were adequate and that the relationship between Plaintiff and Defendants would carry on unchanged [*Id.*]. However, Plaintiff was notified on January 3, 2012 that he was terminated as a Questar Representative [*Id.*]. Based on his termination by Questar, Plaintiff brings two breach of contract claims: (1) Claim One, alleging that Questar breached the "Termination Without Cause" provision of the Agreement; and (2) Claim Two, alleging that Questar breached the "Termination For Cause" provision of the Agreement [*Id.*].

Plaintiff's complaint also brings claims for intentional interference with contract (Claim Three) and intentional interference with economic opportunities (Claim Four) [*Id.*]. Although the facts supporting these claims are vague, based on the allegations of the complaint, as well as a sworn affidavit by Plaintiff submitted in support of his complaint, apparently Plaintiff was also contracted as an insurance agent with Allianz, a company Plaintiff alleges owns Questar [DE #1-1]. Plaintiff alleges that confidential information was shared with Allianz without Plaintiff's permission and in violation of his express request to keep such information confidential [DE #1]. Plaintiff states that, shortly after he was terminated by Questar, Allianz terminated its agent contract with Plaintiff under a "no cause" provision of the agent agreement [DE #1-1]. In his intentional interference with contract claim against Questar, Plaintiff alleges that Defendants' sharing of confidential information

2

induced Allianz to terminate Plaintiff's ability to offer its products to Plaintiff's clients [DE #1]. Further, in his intentional interference with economic opportunity claim, Plaintiff alleges that he had restructured his business around the products offered by Allianz and was making plans to partner with Allianz for the foreseeable future [*Id.*]. According to Plaintiff, Defendants' sharing of confidential information with Allianz caused Allianz to terminate its relationship with Plaintiff and effectively cut off all Plaintiff's future economic opportunities with Allianz, depriving Plaintiff of significant future earnings [*Id.*].

Defendants have now moved to dismiss Plaintiff's complaint on the grounds that, upon being hired by Questar, Plaintiff agreed that any dispute arising out of his employment must be resolved through arbitration before FINRA [DE #7]. According to Defendant, because Plaintiff agreed to arbitrate the claims raised in his complaint as a condition of his employment as a Questar Representative, the Federal Arbitration Act requires dismissal for failure to state a claim upon which relief can be granted.

**II.    ANALYSIS**

The Federal Arbitration Act (the "FAA") creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Under the FAA, there is a strong presumption favoring arbitration. *Glazer v. Lehman Bros, Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). The FAA "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Kruse v. AFLAC Intern., Inc.*, 458 F.Supp.2d 375, 381 (E.D.Ky. 2006)(citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Indeed, "'[t]he

preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-626, 105 S.Ct. 3346, 3353 (1985)(quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). Thus, "[i]t is well-settled that courts should enforce private agreements to resolve disputes by mandatory binding arbitration and any ambiguities or doubts should be resolved in favor of arbitration." *Kruse*, 458 F.Supp.2d at 381 (citing *Glazer*, 394 F.3d at 451)(other citations omitted).

Under the statutory scheme established by the FAA, when considering a motion to dismiss due to an arbitration provision, the court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). *See also Manuel v. Honda R&D Americas, Inc.*, 175 F.Supp.2d 987, 990 (S.D.Ohio 2001)(applying inquiry to a motion to dismiss due to arbitration provision).

Here, neither party disputes the existence or validity of the agreement to arbitrate. Indeed, a review of the Agreement attached to Plaintiff's complaint shows that Plaintiff agreed that he will "be familiar with and will strictly comply with the rules of FINRA, the statutes administered by the SEC and the rules and regulations promulgated there under" [DE# 1-2]. In addition, the Agreement refers to the information contained in Plaintiff's FINRA Form U-4, a document executed by Plaintiff

4

on February 17, 2009, the same date as the Agreement [DE #1-2 and DE #7-3]. Pursuant to the FINRA Form U-4, Plaintiff agreed "to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROS* indicated in Section 4 [i.e. FINRA]..." [DE # 7-3 (emphasis in original)].[1] Thus, pursuant to both the Agreement and FINRA Form U-4, Plaintiff agreed to arbitrate disputes as required by the Rules of FINRA.

FINRA Rule 13200(a) requires arbitration of a "dispute aris[ing] out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." FINRA R. 13200(a) [DE #7-4]. Under FINRA Rule 13100, "Associated Persons" is defined as "a person associated with a member." FINRA R. 13100(a) [DE #7-5]. A "Member" is defined as "any broker or dealer admitted to membership in FINRA..." FINRA R. 13100(o) [DE #7-5]. As provided by the Agreement, Questar is a member of FINRA [DE #1-2]. Thus, because of Plaintiff's association with Questar pursuant to the Agreement, Plaintiff is an "Associated Person" within the meaning of Rule 13200. Similarly, according to the complaint, Defendants Hart and Seale are agents of Questar [DE #1]. Thus, Hart and Seale are also "Associated Persons" within the meaning of Rule 13200. Accordingly, Plaintiff agreed to arbitrate any dispute

---

[1]Although Plaintiff's FINRA Form U-4 was not attached to the complaint, it is attached to Defendants' motion to dismiss and is also referenced in the Agreement, a document that is attached to the complaint, and it is central to Plaintiff's claims regarding his contractual relationship with Questar. Accordingly, consideration of Plaintiff's FINRA Form U-4 is appropriate. *See Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.")(citations omitted).

between himself and Questar, and also between himself and other Associated Persons (including Defendants Hart and Seale), arising out of his or Questar's "business activities."

Plaintiff does not dispute that Claims One and Two fall within the scope of the agreement to arbitrate. However, Plaintiff argues that Claims Three and Four - the intentional interference claims - are not within the scope of the claims Plaintiff agreed to arbitrate because they arise from Defendants' allegedly tortious actions involving a third party and because they occurred after the cancellation of the contract. In *Simon v. Pfizer Inc.*, the Sixth Circuit Court of Appeals noted:

> When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004). Indeed, in such a case, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Id.* at 627 (internal quotations and citation omitted). However, when an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included. *See Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003).

*Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005)(emphasis in original).

Although Plaintiff argues that his intentional interference claims are outside the scope of the agreement to arbitrate, Plaintiff overlooks the broad arbitration language of Rule 13200(a), requiring only that the dispute "arise out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." Although the allegations of Plaintiff's complaint may refer to a third party in that Plaintiff alleges that Defendants intentionally interfered with Plaintiff's business relationship with Allianz, his claims are still against Questar, Hart and Seale, not Allianz. As noted above, Questar is a "Member" and Plaintiff, Hart and Seale are all "Associated Persons" within the meaning of Rule 13200. Thus, the

disputes at issue in Claims Three and Four are between a Member and an Associated Person and between Associated Persons, notwithstanding that the allegations refer to a third party.

Moreover, Plaintiff's argument that his intentional interference claims do not arise from the Agreement itself but, rather, arise from Defendants' allegedly tortious conduct that occurred after the cancellation of the Agreement is similarly unavailing. Rule 13200 does not require the arbitration of disputes that arise only from contracts between Members and/or Associated Persons, nor does the Rule contain any time limitation provisions. Rather, the Rule broadly provides that any dispute that "arises out of the business activities of a member or an associated person" must be arbitrated. Claim Three alleges that Defendants intentionally interfered with Plaintiff's contract with Allianz by sharing confidential information that induced Allianz to terminate Plaintiff's ability to offer Allianz products to his clients, thus causing Plaintiff to sustain serious financial losses. Claim Four alleges that Defendants' sharing of confidential information with Allianz caused Allianz to terminate its relationship with Plaintiff, effectively cutting off all of Plaintiff's future economic opportunities with Allianz and depriving Plaintiff of significant future earnings. Thus, both of these claims arise from Plaintiff's "business activities," and, accordingly, both fall within the scope of the Rule 13200's arbitration requirement.

In addition, as noted by Defendants, other district courts within the Sixth Circuit have uniformly deemed employment-related claims - including claims regarding alleged conduct occurring after the termination of employment - between brokerage firms and their agents as disputes "arising out of the business activities" of FINRA members. *See e.g. Rodriguez v. Charles Schwab Corp.*, 2013 WL 911959, at \*4 (W.D. Tenn. Jan. 29, 2013)(unpublished)(retaliatory discharge claim arose out of business activities with brokerage firm and, accordingly, subject to arbitration); *PFS*

7

*Investments, Inc., et al., v. Imhoff*, 2011 WL 1135538 (E.D.Mich., March 25, 2011)(unpublished)(by executing Form U-4, plaintiff agreed to arbitrate any dispute between him and his firm required to be arbitrated under FINRA rules, including claims for tortious interference with business relations, tortious interference with contractual relations, usurpation of a business opportunity and unjust enrichment); *Pippenger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2009 WL 2244613, at *3-4 (E.D. Tenn, July 29, 2009)(unpublished)(plaintiff's claims of interference with contract and business relations and defamation fell within scope of agreement to arbitrate pursuant to Form U-4, notwithstanding that these claims related exclusively to defendant's conduct before or after the parties' employment relationship). As observed by the *Pippenger* Court: "As for Plaintiff's claims of interference with contract and business relations and defamation, the Court assumes a simple counterfactual: if Defendant had never employed Plaintiff, would those disputes have developed? To put it succinctly, no." *Id*. at *4. Similarly, here, had Plaintiff never entered into the Agreement with Questar, Questar would have had no "confidential information" to share with Allianz, nor any reason to share it. Thus, Plaintiff's intentional interference claims also arise from Questar's "business activities," for purposes of Rule 13200(a).

      Plaintiff further argues that Questar "has an established history in the 6th circuit [sic] of looking to set aside arbitration verdicts when the findings of the arbitration panel are not in Questar's favor" [DE #8]. Plaintiff then points to a case involving Questar and another former Questar employee in which Questar filed an action to set aside a finding by an arbitration panel in the employee's favor. To be sure, there is nothing particularly remarkable about a losing party seeking to overturn an unfavorable arbitration decision, nor does one case equal an "established history." Regardless, even assuming that Plaintiff's allegation is true, this information is simply irrelevant to

the inquiry here, which is whether Plaintiff agreed to submit his claims to arbitration. Because the Court finds that all of Plaintiff's claims alleged in his complaint are (1) disputes arising out of the business activities of Questar and/or Plaintiff; and (2) are between or among Members and Associated Persons and Associated Persons, all of Plaintiff's claims fall within the scope of Rule 13200(a) and, accordingly, fall within the scope of claims that Plaintiff agreed to submit to arbitration.

The next step of the inquiry is to examine whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable. *Glazer*, 394 F.3d at 451. However, because Plaintiff does not assert any federal statutory claims, the Court need not engage in this analysis. Finally, because the Court finds that all of Plaintiff's claims are subject to arbitration, dismissal without prejudice is appropriate. *Kruse*, 458 F.Supp.2d at 388 (citations omitted).

### III. CONCLUSION

For all of the foregoing reasons, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

1. Defendants' motion to dismiss [DE #7] is **GRANTED**; and

2. This case is **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the active docket of the Court.

This October 11, 2013.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge